UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Thomas Hooker,<br><br>                    Plaintiffs<br><br>          -against-<br><br>The City of New York, Alexander Nivar,<br>John Doe 1 and John Doe 2<br><br>                    Defendants | 08 CV 01691 (VM)<br><br>ECF CASE<br><br><br>COMPLAINT AND DEMAND<br>FOR JURY TRIAL |

## PRELIMINARY STATEMENT

1.      This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 for the Defendants' commissions of acts under color of law in violation of plaintiff Thomas Hooker's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

2.      On July 10, 2006, Police Officer Alexander Nivar, along with two other members of New York City Police Department, including a sergeant arrested plaintiff and charged him with misdemeanor possession of a controlled substance.  Plaintiff was subjected to a humiliating visual body cavity search and was detained for approximately 24 hours prior to being arraigned.  Plaintiff did not possess any controlled substances nor break any other law and his case was eventually dismissed for the District Attorney's failure to prosecute it.

## JURISDICTION

3.      This action arises under the Fourth and Fourteenth Amendments to the United

States Constitution and 42 U.S.C. § 1983.

4.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).

## VENUE

5.      Venue is proper pursuant to 28 U.S.C. § 1391 (b) in that, *inter alia*, the events giving rise to the claim occurred in the Southern District of New York.

## JURY DEMAND

6.      The Plaintiff demands a trial by jury on each and every one of his claims as pled herein.

## PARTIES

7.      Plaintiff THOMAS HOOKER was and is a resident of New York City.

8.      Defendant CITY OF NEW YORK ("City") is a municipal corporation within the State of New York.

9.      Defendant NEW YORK CITY POLICE DEPARTMENT (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court.  At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant  times, the NYPD, together with the City, was responsible for enforcing the

rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitutions and laws of the United States and of the State of New York.

10.     At all relevant times herein, defendant ALEXANDER NIVAR, was a police officer employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

11.     At all relevant times herein, defendant Nivar was stationed at the 25th Precinct.

12.     Defendant Nivar's shield number was 13420.

13.     At all relevant times herein, defendant JOHN DOE 1 was a police officer and employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

14.     At all relevant times herein, John Doe 1 was stationed at the 25th Precinct.

15.     At all relevant time herein, John Doe 1 held the rank of sergeant and was defendant Nivar's supervisor.

16.     Plaintiff is unable to determine the actual name of John Doe 1 at this time and thus sues him under a fictitious name. At the time of Plaintiff's arrest, John Doe 1 was a bald Hispanic man with a stocky build.

17.     On information and belief, however, based on a name and shield number contained in the laboratory report filed in the criminal case, John Doe's real last name is Rodriguez and his shield number may be 2746.

18.     At all relevant times herein, defendant JOHN DOE 2 was a police officer and

employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

19.     At all relevant times herein, John Doe 2 was stationed at the 25th Precinct.

20.     Plaintiff is unable to determine the actual name of John Doe 2 at this time and thus sues him under a fictitious name.

21.     At all times relevant herein, defendants Nivar, John Doe 1 and John Doe 2 were each acting under color of state law in the course and scope of his duties and functions as an agent, servant, employee and officer of the City and otherwise performed and engaged in conduct incidental to the performance of his lawful functions in the course of his duties. Defendants South and Pineiro were acting for and on behalf of the City of New York at all times relevant herein with the power and authority vested in them as officers, agents and employee of the City of New York and incidental to the lawful pursuit of their duties as officers, employees and agents of the City of New York.

22.     Defendants Nivar, John Doe 1 and John Doe 2 are sued in their individual and official capacities.

### STATEMENT OF FACTS

23.     On the morning of July 10, 2006, plaintiff Thomas Hooker was standing by a park bench overlooking the baseball diamonds located between East 128th Street, the Harlem River Drive and the Third Avenue Bridge in Manhattan talking to a gentleman from the neighborhood who was sitting on the bench when the two of them were approached by

Defendants Nivar, John Doe 1 and John Doe 2.

24.    One of the defendant officers asked Mr. Hooker what he was doing there and Mr. Hooker stated that he and the other man were just talking to each other.

25.    John Doe 1 stated that they knew who this other person was and that if Mr. Hooker knew him too, he must be getting high.

26.    As John Doe 1 was saying this, one of the other defendant officers was handcuffing Mr. Hooker.

27.    The officers then directed Mr. Hooker to sit on the bench, which he did, at whish time they took his shoes off, search them and found nothing.

28.    As Mr. Hooker was sitting on the bench next to other man, he observed the officers looking around the area.

29.    Mr. Hooker was then directed to stand up and which time he saw John Doe 1 coming over from behind the bench.

30.    He then watched as John Doe 1 pointed to what looked like broken glass on the ground near the bench and said, in substance, "that's it" and proceeded to up sweep up the broken glass into a manilla envelope.

31.    Mr. Hooker, still in handcuffs, was then led into a waiting police van where he was driven around for what seemed like approximately two hours while he observed the defendant officers make several other arrests.

32.    Mr. Hooker was eventually brought to the 25th Precinct at 120 East 119th

Street in Manhattan.

33.    At the precinct, Mr. Hooker was led into a holding cell where he remained handcuffed for approximately one half hour.

34.    While Mr. Hooker was still in the holding cell he was asked to turn around in order that one of the defendant officers could remove his handcuffs.

35.    Mr. Hooker was then directed to remove his clothing one piece at a time and to pass it to the officer, until he was completely undressed.

36.    When he was undressed, the officer directed Mr. Hooker to turn around so that Mr. Hooker's backside faced the officer, and then to "bend over" while holding his buttocks apart with his hands.

37.    Mr. Hooker, who did not believe he had a choice in the matter, complied with all of these orders.

38.    Mr. Hooker was then allowed to put his clothes back on and from that point on waited in the holding cell until transported to Central Booking in lower Manhattan.

39.    Mr. Hooker was finally arraigned in New York Court Criminal Court approximately 24 hours later and charged under New York County docket number 2006NY045935 with one count of Criminal Possession of a Controlled Substance in the Seventh Degree (N.Y. Penal Law § 220.03).

40.    On August 9, 2007 the case against Mr. Hooker was dismissed pursuant to N.Y. Crim. Pro. Law § 30.30 for the New York County District Attorney's office's failure

to prosecute it.

41.    Mr. Hooker denies possessing crack cocaine — or any other controlled substance — on July 10, 2007.

42.    The NYPD has a formal policy, contained in its Patrol Guide, by which it authorizes strip searches only in situations where "the arresting officer reasonably suspects that weapons, contraband, or evidence may be concealed upon the person or in the clothing in such a manner that they may not be discovered by the previous search methods. Other factors that should be considered in determining the necessity for a strip search include, the nature of the crime (serious violent felony), arrest circumstances, subject's reputation (extremely violent person), act of violence, and discoveries from previous searches." Additionally, according to information and documents made available on the Criminal Complaint Review Board's website (www.nyc.gov/ccrb), an NYPD directive, limiting and clarifying the strip search policy, was issued on May 13, 2004 (*see* http://www.nyc.gov/html/ccrb/pdf/nypdssdir.pdf ).

43.    This notwithstanding, on information and belief, the NYPD has *de facto* policy and practice of strip-searching persons for reasons other than those specified in the Patrol Guide or NYPD directives.

## NOTICE OF CLAIM

44.    A Notice of Claim was not filed in this matter.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the Individual Defendants

45.    All other paragraphs herein are incorporated by reference as though fully set forth.

46.    By arresting, detaining and strip searching plaintiff, defendants Nivar, John Doe 1 and John Doe 2 engaged under color of law in the violation of plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to be free from unreasonable searches and seizures, false arrest and imprisonment and malicious prosecution.

### SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the City of New York

47.    All other paragraphs herein are incorporated by reference as though fully set forth.

48.    Municipal liability for the violations of plaintiff's Fourth and Fourteenth Amendment rights rests upon the grounds set forth below.

49.    At all times material to this complaint, the defendant City, acting through the NYPD and the individual defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

50.    At all times material to this complaint, the defendant City, acting through the NYPD and the individual defendants, had *de facto* policies, practices, customs and usages

-8-

of failing to properly train, screen, supervise or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants.  The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

WHEREFORE, the plaintiff requests that this Court:

1.    Assume jurisdiction over this matter;

2.    Award compensatory and punitive damages to plaintiffs against the defendants, jointly and severally;

3.    Award plaintiffs reasonable costs, disbursements and attorneys' fees; and

4.    Grant any other relief the court deems appropriate.

Dated:  New York, New York
          February 18, 2008

Respectfully submitted,

Darius Wadia, L.L.C.

/s/

_____
By:  Darius Wadia, Bar number DW8679
Attorney for Plaintiff
233 Broadway, Suite 2208
New York, New York  10279
dwadia@wadialaw.com

TO:

New York City
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY  10007

Police Officer Alexander Nivar
New York City Police Department
25th Precinct
120 East 119th Street
New York, New York  10035